BOARD OF TRUSTEES OF the OKLA-HOMA CITY FIREMEN'S RELIEF AND PENSION FUND, Appellee,

v.

Kenneth ANDERSON and State Review Board of the Oklahoma State Firefighters Association, Appellant.

No. 55561.

Court of Appeals of Oklahoma, Division 2.

Jan. 5, 1982.

Released for Publication by Order of Court of Appeals Feb. 4, 1982.

---

**3.** 58 A.L.R.3d 814 (1973).

William H. Brogden, Brogden & Behrens, Oklahoma City, for appellant Kenneth Anderson.

Patricia Sellers, Asst. Municipal Counselor, Oklahoma City, for appellee.

BRIGHTMIRE, Judge.

Under attack is a judgment of the district court implicitly reversing an order of a state review board granting an Oklahoma City firefighter the disability pension he sought after it had been denied by the municipal pension board. The trial court remanded the controversy to the review board with directions to "either approve, modify, reject" or remand to the municipal board for the reception of more evidence. The employee appeals.

I

The 44-year-old appellant, Kenneth Anderson, retired June 30, 1978, after working as a firefighter with the Oklahoma City fire department for 11 years and before that with the Witchita Falls, Texas fire department for eight years, and applied shortly thereafter for a disability pension.

A hearing was held on the application by the Oklahoma City Firemen's Relief and Pension Fund (Municipal Board) on July 12, 1978, and it was denied. Anderson asked the Oklahoma State Firefighters Association Review Board (Review Board) to review the matter. That Board, in a hearing held November 3, 1978, reviewed the evidence that was presented to the Municipal Board and received additional evidence in the form of testimony of a physician by the name of Russell Allen who had not testified at the lower board hearing—the only witness who said anything about Anderson's alleged severe headaches being causally related to his efforts as a firefighter. Following this the Review Board granted Anderson a pension for disability sustained in the line of duty.

The Municipal Board appealed to the District Court of Oklahoma County. There, on April 6, 1979, the court heard the matter and sent it back to the Review Board with directions to detail the findings of fact and conclusions of law forming the foundation for its decision.

The Review Board complied and on May 25, 1981, filed its findings and conclusions. It found, first of all, that there "are no injury reports of any kind to indicate an injury to substantiate headaches." Nor are there any "injury reports to connect headaches to the job," said the Review Board. Further it referred to Anderson's testimony that his headaches started occurring in 1973, after fires he fought, but noted the absence of any record that he was taken to any physician for an examination or treatment. Anderson did say he saw his family physician (Masters) about headaches in 1975, and that professional diagnosed the alleged discomfort as "vascular type headaches which creates [sic] a specific problem" for Anderson, "because of exposure to heat, excitment [sic], tension and stress." Masters added that, "this ... being vascular in nature, [Anderson's headaches are] related to the circulatory system and the heart."

The Review Board noted also that Anderson was seen by Peggy Wisdom, M.D., an assistant professor of Neurology at the University Health Science Center. Wisdom wrote: "It is my impression we are dealing with left hemicranial headaches of an uncertain origin." Clinically she found nothing "to account for the patient's headaches." She too thought they were vascular in nature but found them to be "unusual in that they do not have other characteristics of vascular headaches such as associated nausea and vomiting and they are not preceded by auras." Finally, she did not feel that "exposure to heat coupled with exertion was an etiologic factor with regard to the headaches...."

The Review Board also mentioned the fact that Anderson went to the Adams Lester Clinic where City Physician L. M. White performed a retirement examination. White recommended retirement but opined that the employee's headaches have "not been caused by nor permanently aggrava-

ted by his work and that his condition is not work connected."

Finally the testimony of Russell F. Allen, a general practitioner, was heard by the Review Board. Based upon it, the Board found he examined Anderson September 11, 1978, (two months after the Municipal Board hearing) and although Allen noted "no specific findings of an objective nature," he concluded that the "repeated exposures to very high temperatures while in the firefighting business .... That's what's percipitating [sic] ... the vascular problem." [1]

For what it called "conclusions of law" the Review Board said this:

(1) "Mr. Anderson is not able to perform the duties of a firefighter."

(2) "There is sufficient evidence to certify a service connected disability."

The Review Board also alluded to 11 O.S. 1977 Supp. § 49–110 which forbids payment of a disability pension to retired firemen "unless there shall be filed with said board certificates of his disability which ... shall be subscribed and sworn to by [the retiree] and by the municipal physician, if there be one, and the Firemen's Relief and Pension Fund physician and[2] such board may require other evidence of disability before ordering such retirement and payment .... Provided that any member of the fire department of any municipality who is disabled as a result of heart disease or injury to the respiratory system which disease or injury was not revealed by the physical examination passed by the member upon entry into the department, shall be presumed to have incurred the disease while performing his official duties ... unless the contrary is shown by competent evidence : ...."

Upon receipt of this information the trial court held that under the provisions of 11 O.S.1977 Supp. § 49–137 [3] the Review

---

1. Both the elipses and the [sic] are supplied by the Review Board in its order.

2. Emphasis added.

3. This statute was repealed in 1980, effective January 1, 1981. In 1978 it read in part as follows:

The Oklahoma State Firefighters Association, Inc., acting by and through its Board of Trus-

Board had no authority to require adduction of more evidence but could only approve the Municipal Board's order, reject it, modify it or require further evidence be taken by the lower board, and remanded the case to the Review Board with instructions to restrict the scope of its review accordingly.

## II

Anderson's only argument is that the trial court misconstrued § 49–137 in that he should have construed it as giving the Review Board power to hear additional evidence if it decided this was necessary.

The Municipal Board, on the other hand, sides with the trial court and contends that the Review Board was acting in an appellate capacity and could only consider the record compiled at the trial level during the Municipal Board hearing. It likens the Review Board's jurisdiction to that of district court under 12 O.S.1951 § 951 as explained in *In Re White*.[4]

In the view we take of the controversy it is unnecessary to resolve this issue. First of all, regardless of whether the Review Board could or could not receive new evidence, the aggrieved party is given a right to appeal to the district court under 11 O.S.1977 Supp. § 49–128 from the Municipal Board's decision. This right, however, is modified by § 49–137 saying that any "appeal under the provisions of Section 49–

128 ... may be made only after certification or concurrence by the State Review Board."[5]

To reconcile these two statutes and make them workable it seems to us a "complete transcript" required to perfect such an appeal must include a complete transcript of proceedings in the Municipal Board which in turn should have become part of the complete Review Board transcript.[6] Without a complete transcript of the Municipal Board proceeding the Review Board could not properly perform its review function nor could it furnish a complete transcript required for the aggrieved party to perfect an appeal to the district court. However, if we consider the transcript furnished by the Review Board as a "complete" one, we find that it lacked authority to rule as it did because there is no certificate of Anderson's disability in the record subscribed and sworn to by Anderson and the municipal physician. And although the Review Board cited the statute for the presumptions it creates with regard to two diseases—heart and respiratory system—it could not invoke such presumptions because Anderson complains of neither problem.

It seems to us the practical way to dispose of this matter is to determine the outer limits of the Review Board's granted powers. It was given power to approve, modify or reject the conclusion reached by

tees, shall review and examine each decision by local pension boards on matters relating to Oklahoma Firemen's Relief and Pension Fund laws ... as a State Review Board responsible for assisting all local pension boards in the interpretation and implementation of Firemen's Relief and Pension Fund laws. It shall be the duty of all local pension boards, after reaching a decision, upon application for pension benefits, to submit their findings to the State Review Board for review and examination of the action taken by the local board. The decision and action by the local board shall not become final or effective until the same is concurred in by the State Review Board. The State Review Board shall act within sixty (60) days upon any matter presented to it, and its failure to take affirmative action of approval, modification, rejection or to require further evidence shall be deemed to be a concurrence and/or certification of the local pension board's action,

which then becomes final.... The State Review Board, as a regulatory agency, shall have the power and authority to adopt rules and regulations as may be necessary for the promulgation and enforcement of this article.

4. 355 P.2d 404 (Okl.1960).

5. This is just one of several problems presented by establishment of the Review Board review. Another significant one is that it gives rise to potentially four appeals—first to the Review Board, thence to the district court, thence to the supreme court who can assign to the court of appeals giving rise to the potential of a fourth discretionary appeal to the supreme court. This somehow seems excessive and it is perhaps one reason the Review Board was abolished in 1980.

6. *In re White*, Okl., 355 P.2d 404 (1960).

the Municipal Board, but in doing so the intent of the legislature was to correct legal errors committed by the Municipal Board, not to bestow power to act arbitrarily or capriciously, or the power to grant or deny disability pensions beyond that vested in the Municipal Board. In fact it is safe to say that the idea behind the Review Board statute was to afford the parties a speedy means of correcting the Municipal Board's failure to act within the scope of its authority.

And so the core question is: did the Municipal Board act in excess of its authority? The answer requires a look at the powers vested in the Municipal Board with regard to ordinary retirement and payment of pensions to disabled firemen.

It was given authority in 11 O.S.1977 Supp. § 49–109, in regard to disability occurring "while in, and in consequence of, the performance of his duty" as a fireman, to retire him. Specifically the statute says that "upon his written request, or without such request if it deem it for the good of said department, [the Municipal Board may] retire such person from active service, and ... order ... that he be paid ... a monthly pension of one-half (½) of the average monthly salary" he received "during the last 30 months of his service ...." or what he should draw under "Section 49–106" if it is a greater amount. Section 49–109 also provides for a non-service connected disability pension for the one who has served less than 20 years calculated on the basis of ¹⁄₂₀th of the usual pension for each year of service.

Section 49–110—the section cited by the Review Board—specifies that no "person shall be retired, as provided in Section 49–109 of this title, or receive any pension from said fund, unless there shall be filed with said board certificates of disability, which certificates shall be subscribed and sworn to by said person and by the municipal physician, if there be one, and the Firemen's

Relief and Pension Fund physician and such board may require other evidence of disability before ordering such retirement ...." The statute then goes on to the subject of heart disease and injury to the respiratory system, as we mentioned earlier, neither of which conditions are relevant here.

The record of proceedings before the Review Board certified as complete does not contain the required sworn certification. Absent such a certification neither the Municipal Board nor the Review Board had authority to order payment of a service-connected disability pension to Anderson. We hold, therefore, that the Municipal Board did not act in excess of its authority, but that in reversing the Municipal Board, the Review Board did.

### III

■ In our opinion the Review Board's decision should not be allowed to stand for another reason. Its conclusion that Anderson's disabling headache problem occurred "while in, and in consequence of, the performance of his duty as" a fireman, is clearly contrary to the weight of the evidence.[7] None of the physicians who examined Anderson, including his own personal one, Harold Masters, were able to say that his headache malady was caused by working as a fireman. Masters incidentally concluded "it is impossible to be certain of their [the headaches'] cause" but suggested he change occupations because the headaches are "made worse by exposure to heat, excitement, tension, straining, etc." Of further significance is the fact that while Masters sent Anderson to the celebrated Scott-White Clinic in Temple, Texas for evaluation, no report of that group's findings are in evidence. Master's report does say, however, that "they concurred with my diagnosis and agreed with my recommendation."

The only evidence that can be said to support a finding of service-connected disability is Allen's testimony. Weightwise,

7. *In re White, supra,* note 5, holds that the district court's appellate jurisdiction "is limited to determinations whether an error of law was committed in the hearing and whether or not

the findings are supported by the evidence introduced." The same limitations obtain with reference to appeals from the Review Board.

however, it is light. He first saw Anderson two months after the municipal board hearing. He received a history from Anderson that no one else had previously received, namely, that the onset of Anderson's headaches in 1973 were "principally associated by [sic] the exposure to intense heat while firefighting, . . . and were percipitated [sic] by heat." Allen says he examined Anderson and found nothing of an "objective nature." Based on the history he said he received, he expressed an opinion that the "percipitating [sic] cause" of Anderson's vascular headaches was the "repeated exposures to very high temperatures while in the firefighting business."

The reason why we think Allen's opinion should be given little if any credence is: (1) it is based solely on a history allegedly given him by Anderson after the Municipal Board had rejected the claim; (2) there is no evidence that Anderson ever said the headaches were "always associated with fire and heat" in the early stages of their development until he testified before the Review Board; and (3) there is no evidence he ever complained to anyone at work about having headaches much less that they were precipitated by heat while fighting fires.

We therefore hold that the evidence before the Review Board was insufficient to sustain its decision. The order of the district court is affirmed insofar as it reverses the order of the Review Board but modified by deleting its remand order. It is the judgment of this court that Anderson's application be denied.

BACON, P. J., and BOYDSTON, J., concur.